(C. D. 601)

CAMBOSCO SCIENTIFIC CO. *v.* UNITED STATES

192

United States Customs Court, Second Division

(Decided March 11, 1942)

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of Boston, brought to recover certain customs duties alleged to have been improperly exacted on a particular mechanism invoiced as "Wimshurst Static Machines." Duty was levied thereon at the rate of 40 per centum ad valorem under the provision in paragraph 360 of the Tariff Act of 1930 for "laboratory instruments, apparatus, utensils, appliances * * * and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for." It is claimed that said articles are properly dutiable at but 35 per centum ad valorem under the provision in paragraph 353 of said act for "all articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy."

A leaflet containing illustrations of said merchandise was admitted in evidence as illustrative exhibit 1. Also figure 6 on page 2 of a pamphlet entitled "Manual of Static Electricity" showing one of the machines in question in detail, was admitted in evidence as illustrative exhibit 2.

In addition, the plaintiff offered in evidence the testimony of Ervin H. Lewis, a developing engineer in the employ of the plaintiff-corporation, who, after identifying the exhibits, testified in part as follows:

Q. * * * can you describe the operation of a Wimshurst Static Machine?— A. You want a simple explanation?

Q. Yes.—A. A static charge resides on one of the metal segments on the hard rubber plate, and with the rotation of the two plates in opposite directions, and suitable transverse bars having brushes at their ends, the static charges are equalized or neutralized between the two plates, so that all of the negative charges are collected at one side of the machine. All of the positive charges are collected at the other side of the machine, to which are attached two electrodes terminating in balls, where the spark discharge takes place.

Q. Resulting in what?—A. Resulting in a high voltage, high frequency arc. I might say that sometimes; in fact I guess always now, two Leyden jars are connected to the two electrodes, so as to store up the electro-static charge, and deliver it when it has reached a high enough value.

Q. How is the machine operated; by what power?—A. By turning a hand crank, which can't be seen in either of these illustrations, because it is on the other side of the machine.

Q. What does the machine produce?—A. The machine produces electricity.

Q. Where is the machine used?   *   *   *

*         *         *         *         *         *         *

A. In schools, school laboratories, for the demonstration of static electricity phenomena.

Upon this record, we find that the Wimshurst static machines constituting the imported merchandise at bar are articles suitable for producing electrical energy and that they are chiefly used in school laboratories. These facts being undisputed, the only question at issue is whether the articles are more specifically provided for as articles suitable for producing electrical energy, as claimed by the plaintiff, or as laboratory apparatus, as classified by the collector.

In the case of *Arthur H. Thomas Co.* v. *United States*, T. D. 49102, 72 Treas. Dec. 203, we had before us the question of the dutiable classification of certain so-called Hearson electric incubators. They were, as in the instant case, assessed with duty at the rate of 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1930 as laboratory instruments. They were claimed to be properly dutiable at the rate of 35 per centum ad valorem under paragraph 353 of said act as articles having as an essential feature an electrical element or device. In that case we said:

While it is also established by the uncontradicted testimony that these incubators have, as an essential feature thereof, an electrical element or device, nevertheless, the specific and *eo nomine* provision for laboratory instruments takes precedence over the provision in paragraph 353 for "articles having as an essential feature an electrical element or device."   *   *   *.

However, counsel for the plaintiff in their brief filed herein contend that the cited decision is not here controlling for the reason that the plaintiff's claim in the instant case is under another provision in said paragraph 353, to wit, "articles suitable for producing   *   *   * electrical energy," which, counsel contend, is a narrower classification than the one in the same paragraph covering articles having as an

essential feature an electrical element or device. We do not agree with such contention, especially in view of the decision of the appellate court in *United States* v. *C. H. Stoelting Co.*, 21 C. C. P. A. 588, T. D. 46995. In that case the court had before it certain chronoscopes which contained clockwork mechanisms adjusted to record the lapse of time in periods of one one-thousandth of a second, etc. Duty was levied thereon at the rate of $4.50 each and 65 per centum ad valorem under the *eo nomine* provision in paragraph 368 (a) of the Tariff Act of 1930 for clockwork mechanisms. It was claimed that said articles were properly dutiable at but 40 per centum ad valorem under paragraph 360 of said act as scientific and laboratory instruments. In affirming the decision of this court sustaining the plaintiff's claim alleged under said paragraph 360, the appellate court said:

It is well known that many very delicate scientific instruments are provided with clockwork mechanisms of various kinds. This is particularly true of astronomical instruments of very great delicacy and of great value, designed for the purpose of measuring the distance of the stars and planets from the earth. We do not think that Congress intended that all such instruments, used only in pure science, should be classified under said paragraph 368, but did intend that they should be classified under paragraph 360, unless more specifically provided for elsewhere.

It is our conclusion that Congress did not intend to include within the provisions of paragraph 368 any article or device which is used only in pure science.

Paraphrasing the above language it may be said that it is well known that many very delicate laboratory instruments are provided with electrical mechanisms of various kinds. We do not think that Congress intended that all such instruments, used only in laboratories, should be classified under the general provisions of paragraph 353, but did intend that they should be classified under paragraph 360 as laboratory instruments.

On the established facts and the law applicable thereto all claims of the plaintiff must be and they hereby are overruled. Judgment will be rendered accordingly.